UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT O'BRIEN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) No. 1:10-cv-02765 |
| v. | ) ) Judge Joan H. Lefkow |
| GALE LANDERS, et al., | ) ) |
| Defendants | ) |

## OPINION AND ORDER

On December 26, 2006, the plaintiff in this putative class action, Robert O'Brien, entered into a signed gym membership agreement with defendant Gale Landers doing business as Fitness Formula East Lakeview. The agreement stipulated, "Monthly dues will be charged in advance on the first business day of each month (along with any services charged the previous month if applicable)." Complaint, Exhibit A (Dkt. No. Att.1, p. 1 of 2). The agreement was for a minimum of twenty-four dues-paying months, after which time membership could be terminated at any time upon 60 days written notice.[1] The membership agreement stated, "We reserve the absolute right to increase your dues." At some time after the agreement was entered into, plaintiff signed an electronic fund transfer ("EFT") authorization. It stated, "I authorize my bank to make my payments by the method indicated below and post it to my account." On January 5, 2009, defendant debited plaintiff's account an additional one-time charge of $15. Defendant did not provide plaintiff with any advance notice of this charge. One year later, on January 6, 2010, defendant again debited plaintiff's account an additional one-time charge of $35 without any

---

1 Paragraph 9 of the form contract states (or at least implies) that month-to-month memberships may be terminated on 45 days written notice. The parties do not address this apparent internal inconsistency, and it is not material here.

advance notice. Defendant debited these extra amounts via EFT without execution of a new membership agreement setting forth these amounts. Nor did defendant give plaintiff an opportunity to terminate his membership agreement before each charge.

Plaintiff alleges that these transfers violated the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*[2] Plaintiff also alleges that defendant's activities violated the Illinois Physical Fitness Services Act ("PFSA"), 815 Ill. Comp. Stat. 645/1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* Additionally, plaintiff alleges common law breach of contract and unjust enrichment claims against defendant.[3] Defendant has moved to dismiss for failure to state a claim upon which relief may be granted. They contend the facts do not support any of plaintiff's claims. For the reasons stated below the motion to dismiss [#16] is granted in part and denied in part.

## ANALYSIS

Because the EFTA claim is the sole basis for this court's jurisdiction, this claim will be considered first. *See Doe–2* v. *McLean County Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 513 (7th Cir. 2010) ("[W]hen a district court dismisses the federal claim conferring original jurisdiction . . . it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c)(3).").

---

2   *See* 15 U.S.C. § 1693m(g) ("Without regard to the amount in controversy, any action under this section may be brought in any United States district court . . . within one year from the date of occurrence of the violation.").

3   Plaintiff filed this action on May 4, 2010, more than one year after the $15 charge was debited on January 5, 2009. Due to the EFTA's one-year statute of limitations, plaintiff's claims arising from this particular charge are time-barred. *See* 15 U.S.C. § 1693m(g). Thus, the only relevant transaction is the $35 charge debited from plaintiff's account on January 6, 2010.

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with notice of the claims and establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

**Count I: Electronic Funds Transfer Act**

The EFTA permits "preauthorized electronic fund transfers," defined as "an [EFT] authorized in advance to occur at substantially regular intervals[.]" 15 U.S.C. § 1693a(9). All debits by defendant to plaintiff's bank account for membership dues were preauthorized EFTs. Section 1693e of the EFTA elaborates on the provisions governing preauthorized transfers:

> (a)    A preauthorized [EFT] from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. . . .
>
> (b)    In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Board, of the amount to be transferred and the scheduled date of transfer.

Plaintiff's theory of liability is that the one-time $35 charge was not authorized by the EFT agreement because it was neither a monthly dues payment nor a charge for services given the

previous month. Plaintiff thus alleges that defendant violated the EFTA's restriction on preauthorized EFTs, which may be permitted by consumers "only in writing," a copy of which must be given "to the consumer when made."[4] 15 U.S.C. § 1693e(a); *accord* 12 C.F.R. § 205.10(b); *id.* Pt. 205 Supp. I, ¶ 10(b)(2). Defendant contends that plaintiff's EFT authorization for dues and services, plus the agreement that defendant could increase dues, permitted EFTs in any amount.

Plaintiff has presented facts that, if true, would be sufficient to demonstrate that defendant violated the requirements for preauthorized EFTs established under 15 U.S.C. § 1693e(a). The one-time $35 charge was not covered by the plain terms of the original contract. Rather, defendant debited the $35 *in addition* to plaintiff's monthly dues, which were debited on the first day of the month. Neither can the charge fairly be classified as a charge for services of the previous month—a term undoubtedly intended to capture services such as classes, personal trainers, and such. Defendant never told plaintiff why he was being charged, and plaintiff alleges that he received no benefit from the charge. Under EFTA regulations, authorization terms must be "clear and readily understandable." Commentary to 12 C.F.R. Pt. 205, Supp. I, ¶ 10(b)(6). Yet the authorization does not inform plaintiff that charges outside of dues and

---

4 Alternatively, plaintiff alleges that the $35 charge constituted an "unauthorized electronic fund transfer," which the EFTA defines as "an [EFT] from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693a(11). This section appears to be inapplicable to the case before the court. Although the Seventh Circuit has never addressed whether the EFTA's prohibition on unauthorized EFTs applies to merchant-defendants, at least one federal Court of Appeals has held that an EFT initiated by a merchant may violate the EFTA's restrictions on *preauthorized* transfers (as enumerated in § 1693e) regardless of whether the EFT was also "*unauthorized*" under the statute. *See Wike* v. *Vertrue, Inc.*, 566 F.3d 590, 594–95 (6th Cir. 2009) ("Whether the [EFT] is also 'unauthorized' under § 1693a(11) . . . matters only to whether the consumer, his financial institution or both will bear ultimate responsibility for a particular transfer the consumer later contests. . . . [I]t has nothing to do with whether [defendant] violated § 1693e(a)."). This court adopts the reasoning of the Sixth Circuit on this issue, and therefore addresses only whether the $35 charge violated § 1693e(a).

service charges were also contemplated. As such, the charge fell outside the scope of plaintiff's preauthorization. Plaintiff thus states a claim under § 1693m, which confers a private right of action upon consumers against "any person who fails to comply with any provision of this subchapter." Defendant's motion to dismiss the EFTA claim is therefore denied.

Because plaintiff's sole federal claim survives defendant's Rule 12(b)(6) motion, this court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1693m(g).

**Count II: Illinois Physical Fitness Services Act[5]**

As defendant provides physical fitness services, all contracts entered into between defendant and plaintiff must comply with the PFSA. In pertinent part, the PFSA imposes the following restrictions on physical fitness services contracts:

> Every contract for physical fitness services shall be in writing and shall be subject to this Act. All provisions, requirements and prohibitions which are mandated by this Act shall be contained in the written contract before it is signed by the customer. A copy of the written contract shall be given to the customer at the time the customer signs the contract. . . .
>
> Every contract for physical fitness services shall set forth the customer's total payment obligation for services to be received pursuant to the contract.

815 Ill. Comp. Stat. 645/4, 645/5. The PFSA also provides that "any contract for physical fitness services which does not comply with the applicable provisions of this Act shall be void and unenforceable." *Id.* 645/9(c).

Plaintiff alleges that defendant "increas[ed] the plaintiff's . . . payment obligation in excess of what is provided for in [his] Membership Agreement without authorization and/or notice, and without execution of a new Membership Agreement complying with the [PFSA.]" Complaint ¶ 57. Plaintiff notes that although his contract stated that "[t]he Club reserves the

---

5     The court's jurisdiction over the state law claims rests on 28 U.S.C. § 1367(a).

absolute right to increase your dues," it did not "state the amount of or formula for any such increase, the total payment obligation on the contract under such increased rate, the time of any such increase, or the term of any such increase." *Id.* ¶ 56. Whether or not the statute permits broad clauses such as the right to raise dues at any time, absent notice of a change in terms sufficiently in advance to permit the member to withdraw from the agreement before such change is imposed, a member could not be informed of the customer's total payment obligation for services to be received pursuant to the contract. As such, it fails to set forth the customer's total payment obligation for service to be received pursuant to the contract.

Therefore, defendant's motion to dismiss the PFSA count is denied.

**Count III: Illinois Consumer Fraud Act**

Plaintiff also alleges that the one-time charge violated the ICFA. Plaintiff provides two alternative theories for this count. First, he contends that defendant's violation of the PFSA amounts to a violation of section 2Z of the ICFA.[6] *See* 815 Ill. Comp. Stat. 505/2Z ("Any person who knowingly violates the . . . [PFSA] . . . commits an unlawful practice under this Act."). Secondly, he argues that imposition of the $35 charge was an 'unfair practice' in violation of section 2 of the ICFA. *See id.* 505/2.

A.  **Whether plaintiff states a claim for violation of Section 2Z of the ICFA**

Although plaintiff has alleged facts sufficient to state a claim for a PFSA violation, defendant argues that plaintiff's ICFA claim under section 2Z must fail because he has not alleged that defendant "knowingly" violated the PFSA. In response, plaintiff essentially argues

---

6  Both the PFSA and the ICFA allow a consumer to recover damages in addition to reasonable costs and attorneys' fees. The PFSA allows recovery of *treble* damages, whereas punitive damages are recoverable under ICFA. *Compare* 815 Ill. Comp. Stat. 505/10a(a) (ICFA), *with id.* 645/11 (PFSA).

that if defendant knew about the PFSA and violated it, defendant knowingly violated it. Although case law is sparse, it appears that violation of the PFSA does not constitute a violation of the ICFA unless the PFSA violation was committed knowingly, meaning with the intent to disregard the law. *See Kim* v. *Riscuity*, No. 06 C 1585, 2006 WL 2192121, at *4 (N.D. Ill. July 31, 2006) ("[W]ithout a knowing violation of the [PFSA], there is no violation of the ICFA."); *Kunkel* v. *P.K. Dependable Constr., L.L.C.*, 902 N.E.2d 769, 776, 387 Ill. App. 3d 1153, 327 Ill. Dec. 648 (2009) (holding that violation of Illinois Home Repair and Remodeling Act did not violate section 2Z of the ICFA because plaintiff failed to provide either evidence of defendant's state of mind or evidence supporting a *knowing* violation). To determine that any violation of PFSA by a party who knew of the existence of it is also a violation of ICFA would render the "knowingly" requirement in section 2Z superfluous, as there would be no need to distinguish an inadvertent violation from a *knowing* violation.[7]

Plaintiff does not allege that defendant intentionally violated the PFSA, and there are no allegations from which this can be inferred. For these reasons, plaintiff fails to state a claim that defendant violated section 2Z of the ICFA.

> **B.      Whether plaintiff states a claim for violation of Section 2 of the ICFA**

Section 2 of the ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." 815 Ill. Comp. Stat. 505/2. To state a claim under section 2, a plaintiff must allege the following: (1) a deceptive act or unfair practice; (2) intent on defendant's part that plaintiff rely on the deception or unfair practice; and (3) that deception occurred in the course of conduct involving trade or commerce. *Saunders* v. *Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 607,

---

7      There are a total of 13 other state statutes whose violation also constitutes an ICFA violation if committed knowingly. *See* 815 Ill. Comp. Stat. 505/2Z.

278 Ill. App. 3d 307, 214 Ill. Dec. 1036 (1996) (citing *Siegel* v. *Levy Org. Dev. Co.*, 607 N.E.2d 194, 198, 153 Ill. 2d 534, 180 Ill. Dec. 300 (1992)). Recovery may be obtained for unfair *and* deceptive conduct, and thus a consumer may allege that conduct is unfair under the ICFA without also alleging that the conduct is deceptive, and vice versa. *Robinson* v. *Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill. 2d 403, 266 Ill. Dec. 879 (2002). The ICFA does not require actual reliance. *Siegel*, 607 N.E.2d at 198.

Plaintiff alleges that defendant's activities were deceptive and/or unfair, and thus the analysis requires two separate inquiries: (1) whether plaintiff has adequately pleaded deceptive conduct, for which a heightened pleading standard is required, and (2) whether plaintiff has adequately pleaded unfair conduct, which does not require a heightened pleading standard.[8]

### 1. Whether plaintiff states a claim for *deceptive* conduct under the ICFA

Plaintiff alleges that in being charged an extra $35 without advance notice or authorization, defendant intentionally misrepresented the contract price for fitness services. Plaintiff claims that he relied on defendant's misrepresentations and omissions to his detriment by signing the membership agreement with Fitness Formula instead of "another business at a lower price." Complaint ¶ 66. To state a claim for fraudulent misrepresentation, the plaintiff

---

8   In pertinent part, plaintiff's complaint alleges that defendant engaged in a "practice of misrepresenting the contract price for fitness services by increasing the consumer's payment obligation without authorization and/or notice of the [EFT] or ability to terminate the contract and avoid payment." Complaint ¶ 64. Plaintiff then argues in the alternative that this constitutes "a deceptive *and/or* unfair act or practice prohibited by ICFA." *Id.* (emphasis added). Plaintiff seemingly assumes that the increase in his payment obligation, without more, sufficiently constitutes misrepresentation because plaintiff was never told about the possibility of such an increase at the time he entered into the membership agreement. Yet to prove fraudulent misrepresentation the plaintiff must show that the defendant acted with a heightened scienter, *i.e.*, intent to deceive. *See Dloogatch* v. *Brincat*, 920 N.E.2d 1161, 1166, 396 Ill. App. 3d 842, 336 Ill. Dec. 571 (2009). In proving unfair conduct, a plaintiff need not prove the defendant's intent to deceive. Thus, this analysis divides plaintiff's allegation into two separate claims: (1) that the defendant intentionally misrepresented the contract price at the time plaintiff signed it in 2006, and (2) that the defendant engaged in unfair conduct when he increased the consumer's payment obligation without authorization or notice.

must prove the following: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Soules* v. *Gen. Motors Corp.*, 402 N.E.2d 599, 601, 79 Ill. 2d 282, 37 Ill. Dec. 597 (1980).

To adequately plead a cause of action for deceptive conduct in violation of section 2 of the ICFA , "a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage caused to the plaintiff (5) proximately caused by the deception." *Oliveira* v. *Amoco Oil Co.*, 776 N.E.2d 151, 160, 201 Ill. 2d 134, 267 Ill. Dec. 14 (2002). Because allegations of misrepresentation sound in fraud, however, plaintiff's claim of deceptive conduct must be pleaded with particularity to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See Daniels* v. *Bursey*, 313 F. Supp. 2d 790, 801 (N.D. Ill. 2004). This particularity requirement applies to claims of deception made under the ICFA. *Id.* To satisfy Rule 9(b), "the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Miller* v. *Showcase Homes, Inc.*, No. 98-C-2009, 1999 WL 199605, at *2 (N.D. Ill. March 31, 1999) (noting that under Rule 9(b), plaintiff must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated" (internal quotations and citations omitted)).

Plaintiff's complaint fails to satisfy the heightened pleading standard of Rule 9(b) necessary to state a claim for a deceptive act or practice under the ICFA. Plaintiff alleges that the $35 charge was debited from his account without notice or authorization, but the complaint does not allege that defendant made a false statement or omission of material fact to plaintiff that he knew to be false. *See Soules*, 402 N.E.2d at 601 (stating elements of misrepresentation). The facts in the complaint viewed in the light most favorable to the plaintiff only allow the inference that the $35 charge was not authorized by the membership agreement. Plaintiff supplies no facts touching on defendant's alleged misrepresentation, *i.e.*, there is no "who, what, when, where and how" alleging the circumstances under which defendant fraudulently induced plaintiff to sign the membership agreement knowing that it did not accurately state plaintiff's payment obligations. It is impossible to tell from the complaint whether defendant misrepresented the payment obligations under the membership agreement at the time plaintiff signed it. In the absence of such information, plaintiff's complaint does not satisfy the Rule 9(b) pleading standard. *Cf. DiLeo*, 901 F.2d at 627. Without alleging in detail facts surrounding defendant's fraudulent intent to deceive plaintiff in 2006 as to the membership agreement's payment obligations, the one-time charge of $35 made more than three years later is insufficient to state a claim for misrepresentation.[9] Thus, plaintiff does not state a claim for deceptive conduct under the ICFA.

### 2. Whether plaintiff states a claim for *unfair* conduct under the ICFA

Section 2 of the ICFA, 815 Ill. Comp. Stat. 505/2, directs that in determining whether conduct is unfair or deceptive under the ICFA, interpretations of "unfair or deceptive practices" under section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), shall be considered.

---

9   Although plaintiff alleges that defendant "intended that Plaintiff rely on the[] deceptive . . . practices," plaintiff does not supply any facts that indicate fraudulent activity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . .").

In *FTC* v. *Sperry & Hutchinson Co.*, 405 U.S. 233 (1972), the Supreme Court set out three factors for establishing unfair conduct: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. *Id.* at 244 n.5. The Illinois Supreme Court has interpreted *Sperry* to impose only a factor-based framework, not a three-part conjunctive test: "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser degree it meets all three." *Robinson*, 775 N.E.2d at 961. To state a claim under the ICFA using any of the *Sperry* factors, "the plaintiffs must describe how the [unfair practice] is oppressive or violates public policy. Without such a description, the complaint fails to state a cause of action." *Rockford Mem'l Hosp.* v. *Havrilesko*, 858 N.E.2d 56, 65, 368 Ill. App. 3d 115, 306 Ill. Dec. 611 (2006).

Plaintiff states a claim under section 2 of the ICFA because he alleges that "[defendant] increas[ed] the consumer's payment obligation without notice and/or authorization of the [EFT] or ability to terminate the contract and avoid payment." Complaint ¶ 64. Courts interpreting the meaning of 'unfair practices' have held that a plaintiff states a claim under the ICFA where the defendant's conduct gave plaintiff no reasonable alternative to avoid incurring a charge or penalty. *See, e.g.*, *Hill* v. *PS Ill. Trust*, 856 N.E.2d 560, 569, 368 Ill. App. 3d 310, 305 Ill. Dec. 755 (2006) (holding that plaintiff sufficiently described an unfair practice under the ICFA when defendant's conduct gave plaintiff no reasonable opportunity to avoid a lien sale); *People ex rel. Fahner* v. *Hedrich*, 438 N.E.2d 924, 929, 108 Ill. App. 3d 83, 63 Ill. Dec. 782 (1982) (finding owner of mobile home park liable under ICFA for prohibiting park residents from selling their sites without paying a substantial transfer fee that the residents had no choice but to pay); *see also Centerline Equip. Corp.* v. *Banner Pers. Serv.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008)

("Conduct is oppressive [under the ICFA] only if it imposes a lack of meaningful choice or an unreasonable burden on its target."). On the other hand, Illinois courts have declined to find an ICFA violation in the "total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness." *Saunders*, 662 N.E.2d at 608. Plaintiff's ICFA claim falls into the former category and thus sufficiently describes an unfair practice. A crucial aspect of his section 2 allegation is that he could not avoid the charge by terminating his contract because of the 60-day notice requirement for cancellation.[10] The allegations sufficiently plead 'oppressive' conduct under the ICFA. Therefore, plaintiff has stated adequately a claim for relief under section 2 of the ICFA.

Defendant maintains that, even if plaintiff's pleadings are sufficient to state an ICFA claim under the federal notice-pleading standards of Rule 8, the unfair-conduct claim must be pleaded with particularity in accordance with Rule 9(b). The Seventh Circuit has expressly held that the heightened pleading requirement of Rule 9(b) does not apply to ICFA claims based on unfair practices (as opposed to those based on fraud or misrepresentation), as this one is. *See Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs.*, 536 F.3d 663, 669–70 (7th Cir. 2008).

For the foregoing reasons, the court denies defendant's motion to dismiss plaintiff's claims made under section 2 of the ICFA. Although plaintiff does not state a claim for *deceptive* conduct under the Act, he does state a claim for *unfair* conduct.

---

10     Plaintiff's complaint does not use specifically the words "immoral, unethical, oppressive, or unscrupulous," but "it alleges conduct that, if proven, could support the statutory definition of unfairness under the [ICFA]." *Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs.*, 536 F.3d 663, 672 (7th Cir. 2008). This is sufficient to state a claim under the ICFA. *Id.*

**Count IV: Common law breach of contract**

In addition to the federal and state-law claims, plaintiff also alleges that defendant breached the terms of the membership contract by imposing the one-time charge. Under Illinois law, statutes in effect when a contract is made are incorporated as a term of the contract. *Braye* v. *Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1303, 175 Ill. 2d 201, 222 Ill. Dec. 91 (1997). Therefore, a contract for physical fitness services implicitly incorporates all of the requirements listed in the PFSA. It follows that if either party violates any of the PFSA's requirements, that party has breached the contract. As explained above, plaintiff has presented sufficient facts to plead a violation of the PFSA. In doing so, plaintiff has stated a claim for breach of contract. Defendant's motion to dismiss Count IV is thus denied.

**Count V: Unjust Enrichment**

Finally, plaintiff alleges that by debiting his account without adequate notice or authorization, defendant unjustly retained a benefit in the form of an unauthorized fund transfer. Complaint ¶ 76. As grounds for his common law unjust enrichment claim, plaintiff argues that "[defendant] accepted the benefit from [his] retaining unauthorized funds debited from Plaintiff's . . . accounts, and it would be inequitable for [defendant] to retain the benefit of those monies." *Id.* ¶ 78. As explained *supra* at footnote 4, however, the EFTA's prohibition on unauthorized transfers (15 U.S.C. § 1693a(11)) does not apply to merchant-defendants. Thus, alleging that defendant retained a "benefit" in the form of the monies received from an unauthorized EFT cannot form the basis for an unjust enrichment claim.

Even if section 1693a(11) did apply to merchant-defendants, unjust enrichment would not be an appropriate theory of relief here. The premise of unjust enrichment is that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the

other." *F.H. Prince & Co.* v. *Towers Fin. Corp.*, 656 N.E.2d 142, 151, 275 Ill. App. 3d 792, 211 Ill. Dec. 950 (1995) (quoting Restatement (First) of Restitution § 1, at 12 (1937)). The doctrine of unjust enrichment presents an implied or quasi-contract claim, and thus "where there is a specific contract which governs the relationship between the parties, the doctrine has no application." *Id.*; *see also People ex rel. Hartigan* v. *E & E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill. 2d 473, 180 Ill. Dec. 271 (1992); *La Throp* v. *Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195, 68 Ill. 2d 375, 12 Ill. Dec. 565 (1977). In this case, plaintiff and defendant entered into a written contract that was designed to govern all aspects of plaintiff's gym membership. Plaintiff alleges that the $35 was not authorized under the terms of the contract, and thus the superior theory on which to proceed is breach of contract, as he has done in count IV. Given the existence of the written contract, plaintiff cannot proceed under the equitable doctrine of unjust enrichment. Therefore, plaintiff fails to state a claim under count V, and the court will grant defendant's motion to dismiss this count.

## CONCLUSION AND ORDER

Defendant's motion to dismiss plaintiff's complaint [#16] is granted in part and denied in part. Count V is dismissed. Plaintiff may only pursue relief under section 2 of ICFA.

Dated: January 24, 2011         Enter: _____
                                JOAN HUMPHREY LEFKOW
                                United States District Judge

14